

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

June 11, 1973

The Honorable Ward W. Markley
Jasper County Attorney
Jasper, Texas 75951

Opinion No. H- 47

Re: Questions relating to method of procedure for effecting Article 7, § 6, Texas Constitution as amended in November, 1972.

Dear Mr. Markley:

You have submitted several questions growing out of the adoption, in November 1972, of Article 7, § 6b as an amendment to the Constitution of the State of Texas. It reads:

"Notwithstanding the provisions of Section 6, Article VII, Constitution of the State of Texas; any county, acting through the commissioners court, may reduce the county permanent school fund of that county and may distribute the amount of the reduction to the independent and common school districts of the county on a per scholastic basis to be used solely for the purpose of reducing bonded indebtedness of those districts or for making perman- ent improvements. The commissioners court shall, however, retain a sufficient amount of the corpus of the county permanent school fund to pay ad valorem taxes on school lands or royalty interests owned at the time of the distribution. Nothing in this Section affects financial aid to any school district by the State. " (Emphasis added)

Your first question is what is meant by the words "on a per scholastic basis" as used in the amendment.

The term "scholastic" is nowhere defined in the Constitution. In Article 7, § 5 it is used as an adjective ("scholastic population"). In the Texas Education Code it is used both as an adjective ("scholastic year, " scholastic age, etc. ) and as a noun ("scholastics"). In Love v. City of

Dallas, 40 S. W. 2d 20 (Tex. 1931) and Mumme v. Marrs, 40 S. W. 2d 31 (Tex. 1931), the term was used to designate a member of the constitutional "scholastic population" (a person includable in the "scholastic census"); all residents between the ages of 6 years and 18 years are includable in the scholastic census, without reference to their attendance or non-attendance upon any school. (Tex. Education Code, § § 1401 and 1402).

Despite the fact that in § 15. 01 of the Education Code, the term "scholastic population" is defined to mean "all pupils within the scholastic age enrolled in average daily attendance the next preceding scholastic year . . . .", because of the decisions of the Supreme Court of Texas in Love v. City of Dallas and Mumme v. Marrs, supra, we are compelled to assign to the word "scholastic," as used in the Texas Constitution, Article 7, § 6b, the meaning: "a person of scholastic age residing in the school district, whether attending a school therein, or not." A different interpretation by us would contradict the "trust" concept announced by Love.

Therefore, our answer to your first question is that "on a per scholastic basis" as used in Article 7, § 6b of the Constitution means "on the basis of the number of persons residing in the school district eligible by age for free education." It has no relation to average daily attendance.

Your second question has to do with scholastics of Jasper County who attend school districts in adjoining counties.

Here again the decision in Love v. City of Dallas, supra, is of assistance and, under the doctrine of stare decisis, binding upon us. The problem in that case was one of transferring students from one county to a school district in another county, and from one school district in a county to another district in the same county.

In the Love case, the court said:

> "In view of the history of the subject and the
> statutory and constitutional provisions referred to
> above, it is plain, we think, that the property and
> funds of the public school are held in trust by the
> city, district, county, or other statutory agency, to
> be used for the benefit of the school children of the

> community or district in which the properties exist,
> or to which the school funds have been allocated.
> We think these properties and funds are so plainly
> and clearly impressed with a trust in favor of the
> local public schools of the city or district that they
> are within the protective claims of both the state and
> federal Constitutions, and that the Legislature is with-
> out power to devote them to any other purpose or to the
> use of any other beneficiary or beneficiaries . . . . "
> (40 S. W. 2d at 26)

So far as we can determine this trust theory has not been modified and still represents the law of the State of Texas. To give to § 6b of Article 7 of the Constitution any different interpretation would place it in irreconcilable conflict with § 6 which <u>vests</u> title to school lands in the counties and provides that lands, and the proceeds thereof, held by the several counties for educational purposes "shall be held by said counties alone as a trust for the benefit of public schools <u>therein</u> . . . . "

The "notwithstanding" language of Article 7, § 6b, cannot be held to override the "vested" language of § 6 and thereby violate the Federal Constitution, Article 1, § 10. <u>Simpson v. Pontotoc Common County Line School District No. 31,</u> 275 S. W. 449 (Tex. Civ. App., Austin, 1925, writ refused). In our opinion such language has reference only to the investment provisions of § 6.

We think your second question in fact involves two: (1) How shall distribution be made where a school district may lie in two counties with a scholastic resident of the district in one county physically attending school in the other and (2) How shall distribution be made when a scholastic resident in one county attends a school in a district which is wholly within another county?

It is our opinion that where a school district lies in counties A and B with the schools physically located in county B, county A, in distributing its county permanent school fund, should allocate to the school district a pro rata part for each "scholastic" residing in the part of the district within county A.

On the other hand, in the second situation where a resident of county A attends a school in a district wholly within county B, the commissioners court of county A has no authority to allocate any of its county permanent school fund to the school district in county B. Transfers of students and of funds paid by the State for their education as well as tuition fees which may be charged for transfer students are covered by subchapter C of Chapter 21 of the Texas Education Code (§ 21. 061 to § 21. 063).

Your final question has to do with the effect distribution under § 6b of Article 7 might have upon the appropriation of State funds to the county.

Section 6b specifically provides: "Nothing in this Section affects the financial aid to any school district by the State."

The corpus of the county permanent school fund has not been, and could not be, used in determining the amount of State appropriations a school district is to receive. Article 7, § 6, Texas Constitution. Hence, proceeds realized from distribution of the county permanent school fund would not be considered part of the Foundation School Program (§ 16. 71, et seq., Texas Education Code) nor used in computing local fund assignments (§ 16. 76, et seq., Texas Education Code.) Only county available school funds realized by the district are accountable for Minimum Foundation Program purposes (§ 16. 01, Texas Education Code). Since county available funds are those funds realized from earnings of investments of the county permanent fund, a reduction in the county permanent fund would not affect the district's appropriation of State funds except in one indirect way: by reducing the earning base. Should the commissioners court decide to distribute to the counties' school districts a portion of the permanent school fund, then, of course, the estimated county available school fund (earnings) will be less than reported and the Texas Education Agency, Division of Finance, should be consulted as to the proper procedures to follow in submitting an amended or corrected estimate.

## SUMMARY

For the purposes of a distribution of county permanent school funds pursuant to § 6b of Article 7 of the Constitution of Texas, the language "on a per scholastic basis" means on the basis of the number

of residents of free school age in each district. Each district lying wholly or in part within the county should receive its pro rata share of any distribution based upon its resident scholastics. Receipt of such a share of the county's permanent school fund does not affect the entitlement of the district to State funds except insofar as the available school fund is also reduced.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee